# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **STATE OF LOUISIANA,**<br>**STATE OF ALASKA,**<br>**STATE OF ARKANSAS,**<br>**COMMONWEALTH OF KENTUCKY,**<br>**STATE OF MISSISSIPPI,**<br>**STATE OF MISSOURI,**<br>**STATE OF MONTANA,**<br>**STATE OF OKLAHOMA,**<br>**STATE OF SOUTH CAROLINA,**<br>**STATE OF WEST VIRGINIA, AND**<br>**STATE OF WYOMING,**<br>**AMERICAN PETROLEUM INSTITUTE,**<br>**INTERSTATE NATURAL GAS**<br>**ASSOCIATION OF AMERICA, and**<br>**NATIONAL HYDROPOWER**<br>**ASSOCIATION**<br><br>       **Plaintiffs,**<br><br>       **v.**<br><br>**U.S. ENVIRONMENTAL PROTECTION**<br>**AGENCY and**<br>**MICHAEL REGAN, in his official capacity**<br>**as Administrator of the U.S. Environmental**<br>**Protection Agency,**<br><br>       **Defendants.** | **CIVIL ACTION NO.** |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

BACKGROUND ..........................................................................................................................1

    A.  Legal Background ......................................................................................................1

    B.  Factual Background ................................................................................................10

STANDARD OF REVIEW ........................................................................................................11

ARGUMENT ..............................................................................................................................12

    I.    Plaintiffs Are Likely To Prevail On The Merits Of Their Claim That The 2023 Rule Is Impermissibly Retroactive ................................................................................12

    II.   Plaintiffs Will Suffer Irreparable Harm In The Absence Of An Injunction If The 2023 Rule Is Applied To Pending Section 401 Certification Applications .....................16

    III.  The Balance Of Equities And Public Interest Favor Granting Injunctive Relief .............21

CONCLUSION ...........................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Arevalo v. Ashcroft*,
    344 F.3d 1 (1st Cir. 2003) .......................................................................... 16

*Arkansas v. Oklahoma*,
    503 U.S. 91 (1992) ...................................................................................... 2

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988) .......................................................................... *passim*

*Cent. & S. W. Servs., Inc. v. EPA*,
    220 F.3d 683 (5th Cir. 2000) .................................................................... 17

*Chem. Waste Mgmt., Inc. v. EPA*,
    869 F.2d 1526 (D.C. Cir. 1989) ............................................................... 17

*Faiz-Mohammad v. Ashcroft*,
    395 F.3d 799 (7th Cir. 2005) .................................................................... 16

*Fed. Election Comm'n v. Cruz*,
    596 U.S. 289 (2022) .................................................................................. 25

*Fernandez-Vargas v. Gonzales*,
    548 U.S. 30 (2006) .................................................................................... 17

*Georgetown Univ. Hosp. v. Bowen*,
    821 F.2d 750 (D.C. Cir. 1987) ........................................................... 15, 19

*Germain v. US Bank Nat'l Ass'n*,
    920 F.3d 269 (5th Cir. 2019) ....................................................... 14, 17, 23

*Immigr. & Naturalization Serv. v. St. Cyr*,
    533 U.S. 289 (2001) .................................................................................. 14

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) .................................................................................... 2

*Mejia v. Gonzales*,
    499 F.3d 991 (9th Cir. 2007) .................................................................... 14

*Missouri v. Biden*,
    83 F.4th 350 (5th Cir. 2023) ..................................................................... 19

*Mock v. Garland*,
    75 F.4th 563 (5th Cir. 2023) ..................................................................... 14

*Nat'l Mining Ass'n v. Dep't of Labor*,
    292 F.3d 849 (D.C. Cir. 2002) ........................................................ *passim*

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................. 25

*Nobby Lobby, Inc. v. City of Dallas*,
    970 F.2d 82 (5th Cir. 1992) ........................................................ 25

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
    550 F.3d 778 (9th Cir. 2008) ...................................................... 23

*Phillip Morris USA Inc. v. Scott*,
    561 U.S. 1301 (2010) ............................................. 19, 21, 22, 24

*PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*,
    511 U.S. 700 (1994) ...................................................................... 2

*S.D. Warren Co. v. Me. Bd. of Env't Prot.*,
    547 U.S. 370 (2006) ...................................................................... 3

*Sarmiento Cisneros v. U.S. Att'y Gen.*,
    381 F.3d 1277 (11th Cir. 2004) ................................................. 16

*Sierra Club v. Whitman*,
    285 F.3d 63 (D.C. Cir. 2002) ............................................... 19, 25

*Silva Rosa v. Gonzalez*,
    490 F.3d 403 (5th Cir. 2007) ........................................... 15, 16, 17

*Texas v. Biden*,
    10 F.4th 538 (5th Cir. 2021) ..................................................... 25

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ............................................. 19, 21, 22, 24

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) .................................................................... 13

*Valdez-Sanchez v. Gonzalez*,
    485 F.3d 1084 (10th Cir. 2007) ................................................ 16

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................ 13

**Statutes**

5 U.S.C. § 551 ................................................................................... 19

33 U.S.C. § 1311 ................................................................................. 2

33 U.S.C. § 1312 ................................................................................. 2

33 U.S.C. § 1313 ................................................................................. 2

33 U.S.C. § 1316 ................................................................................. 2

33 U.S.C. § 1317 ................................................................................. 2

33 U.S.C. § 1341 ....................................................................... *passim*

33 U.S.C. § 1362 ............................................................................. 5, 9

Pub. L. No. 91-224, 84 Stat. 91 (1970)...................................................................... 4

Pub. L. No. 92-500, 86 Stat. 816 (1972).................................................................... 4

**Regulations**

40 C.F.R. § 121.1 (2020) ............................................................................ *passim*

40 C.F.R. § 121.1 (2023) .......................................................................... 9, 18, 23

40 C.F.R. § 121.2 (1971) ...................................................................................... 4

40 C.F.R. § 121.3 (2020) ........................................................................... 4, 21

40 C.F.R. § 121.3 (2023) ...................................................................... 8, 18, 21

40 C.F.R. § 121.5 (2020) ..................................................................................... 6

40 C.F.R. § 121.5 (2023) ......................................................................... 10, 22

40 C.F.R. § 121.6 (2020) ..................................................................................... 7

40 C.F.R. § 121.6 (2023) ................................................................................... 10

40 C.F.R. § 121.7 (2020) ..................................................................................... 7

40 C.F.R. § 121.10 (2023) ................................................................................. 11

*Clean Water Act Section 401 Certification Rule,*
   85 Fed. Reg. 42,210 (July 13, 2020)......................................................... 4, 5, 6, 7

*Clean Water Act Section 401 Water Quality Certification Improvement Rule*, 87 Fed.
   Reg. 35,318 (June 9, 2022) ...................................................................................... 7

*Clean Water Act Section 401 Water Quality Certification Improvement Rule*, 88 Fed.
   Reg. 66,558 (Sept. 23, 2023) ............................................................................ *passim*

**Other Authorities**

Nat'l Hydropower Ass'n, *Comments on EPA's Clean Water Act Section 401 Water
   Quality Certification Improvement Rule* (Aug. 5, 2022) .................................... 18

Nat'l Hydropower Ass'n, *Comments on EPA's Proposal for Updating Regulations of
   Water Quality Certification* (Oct. 21, 2019)........................................................ 3, 6, 24

iv

**INTRODUCTION**

Through new regulations (referred to herein as the "2023 Rule"), the Environmental Protection Agency ("EPA") impermissibly expanded State certification authority under Section 401 of the Clean Water Act ("CWA" or "the Act").  Even though the 2023 Rule conflicts with the immediately prior EPA rule (not to mention the CWA itself), EPA applied this new rule retroactively to already pending Section 401 certification requests.  The 2023 Rule is unlawful for multiple reasons, as alleged in the Complaint, but through this Motion, Plaintiffs seek only limited relief: a preliminary injunction enjoining application of the Rule to those pending Section 401 certification requests submitted after the effective date of the immediately prior rule, but before the effective date of 2023 Rule.

Applying the 2023 Rule retroactively to these pending requests would be unlawful and would cause irreparable harm to Plaintiffs.  EPA has no statutory authority to promulgate retroactive regulations, and the retroactive application of the Rule to these pending requests would impair the vested rights and reasonable expectations of those requesters.  Without a preliminary injunction, the States must apply the new regime to already-pending requests, harming Plaintiff organizations and their members who submitted their request under EPA's prior rule.

The Court should thus preliminarily enjoin the 2023 Rule as to pending Section 401 certification applications submitted to the States after the effective date of the prior rule, but before the effective date of the 2023 Rule.

**BACKGROUND**

**A.      Legal Background**

1. Subsection 401(a) of the CWA provides that "[a]ny applicant for a Federal license or permit to conduct any activity . . . which may result in any discharge into the navigable waters,

shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate." 33 U.S.C. § 1341(a)(1).  If a federal license or permit will authorize an activity that may result in discharge into a navigable water, the federal license or permit applicant must obtain a water quality certification from the State in which the discharge "originates" before the federal license or permit may issue.  33 U.S.C. § 1341(a)(1).  Section 401 is a cornerstone of the "cooperative federalism" framework of the CWA, providing an important role for States to participate in an otherwise exclusively federal licensing or permitting process. *See PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 704 (1994) ("*PUD No. 1*"); *see also Arkansas v. Oklahoma*, 503 U.S. 91, 103 (1992); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 490 (1987).

When the relevant State receives a request for a Section 401 certification from an applicant for a federal license or permit—such as a license or relicense to build or operate a hydropower project—the State must determine whether "any such discharge [from the project] will comply with" various effluent and water quality standards promulgated pursuant to specified CWA provisions—namely Sections 301, 302, 303, 306, and 307 of the Act, codified at 33 U.S.C. §§ 1311, 1312, 1313, 1316, and 1317.  33 U.S.C. § 1341(a)(1); *see generally* Decl. of Sahara Shresta ("Shresta Decl."), Ex. A, Nat'l Hydropower Ass'n, *Comments on EPA's Proposal for Updating Regulations of Water Quality Certification* at 6 (Oct. 21, 2019) ("NHA 2019 Comment"); Decl. of David Olsheski, ("Olsheski Decl.") ¶¶ 7, 17, 27; *see also S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 385–86 (2006).  So, per Section 401, "[p]rior to the initial operation of any federally licensed or permitted facility or activity which may result in any discharge into the navigable waters," the State must "review the manner in which the facility or activity shall be operated or conducted for the purposes of assuring that applicable effluent limitations or other

limitations or other applicable water quality requirements will not be violated." 33 U.S.C. § 1341(a)(4). Subsection 401(d) provides that "[a]ny certification" provided by a certifying authority "shall set forth any effluent limitations and other limitations, and monitoring requirements" necessary to ensure compliance with applicable provisions of the CWA as well as "with any other appropriate requirement of State law set forth in such certification." *Id.* § 1341(d). Thus, when a party submits a request for a certification, the State may grant the request, deny the request, or grant the request with certain conditions. *See id.* If the State "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of [Subsection 401(a)] shall be waived." 33 U.S.C. § 1341(a)(1).

2. EPA first promulgated water-quality certification regulations in 1971 to implement Section 21(b) of the Water Quality Improvement Act of 1970, which had required States to certify that "such *activity* will be conducted in a manner which will not violate applicable *water quality standards*." Pub. L. No. 91-224, 84 Stat. 91, 108 (1970) (emphases added). Consistent with Section 21(b), EPA's 1971 regulations required a certification from a State to include a statement that there is a "reasonable assurance that the *activity* will be conducted in a manner which will not violate applicable *water quality standards*." 40 C.F.R. § 121.2(a) (1971) (emphases added). But shortly after EPA promulgated these regulations, Congress enacted Section 401 with the 1972 CWA amendments and modified the applicable statutory language to focus on "discharge[s]," Pub. L. No. 92-500, 86 Stat. 816, 877 (1972)—not "activit[ies]," 40 C.F.R. § 121.2(a) (1971).

3. EPA did not update the 1971 regulations to match the new statutory language until September 11, 2020, when it finalized the 2020 Rule. *Clean Water Act Section 401 Certification Rule*, 85 Fed. Reg. 42,210 (July 13, 2020). The 2020 Rule "establish[ed] the scope of section 401

as protecting the quality of waters of the United States from point source discharges associated with federally licensed or permitted activities by requiring compliance with water quality requirements, as defined in this final rule." 85 Fed. Reg. at 42,229. Five features of this Rule are relevant here:

*First*, the 2020 Rule provided that "[t]he scope of a . . . section 401 certification is limited to assuring that a *discharg*e . . . will comply with water quality requirements." 40 C.F.R. § 121.3 (2020) (emphasis added). Thus, under the 2020 Rule, the scope of certification in EPA's regulations was amended to reflect the CWA's major change in statutory language from the Water Quality Improvement Act of 1970, narrowing the certification requirement from a State certifying that an "*activity* . . . will not violate applicable water quality standards," 84 Stat. at 108 (emphasis added), to a certification from a State "that any such *discharge* will comply with the applicable provisions" of various CWA sections related to water quality standards, 33 U.S.C. § 1341(a)(1) (emphasis added). This means that, in the Section 401 certification process, the State may only "certify that the *discharge* resulting from the proposed federally licensed or permitted project will comply with the CWA" and may not impose "certification conditions that address water quality impacts from any aspect of the construction or operation of the activity as a whole." 85 Fed. Reg. at 42,232. This focus on the "discharge," rather than the "activity," prohibits an "expan[sion]" of "section 401 regulatory authority," *id.*, by precluding States from asserting the authority to issue a "certification [that] broadly cover[s] impacts from the entire activity," *id.* at 42,230.

*Second*, the 2020 Rule defined "discharge" to mean "a discharge from a *point source* into a water of the United States," as opposed to a nonpoint source. 40 C.F.R. § 121.1(f) (2020) (emphasis added). A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure,

container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged," and is specifically defined to exclude "stormwater discharges and return flows from irrigated agriculture."  33 U.S.C. § 1362(14). Accordingly, under the 2020 Rule, a certifying authority's review was limited to the effects of a discharge from a "discrete" or "discernable" conveyance, meaning that Section 401 applicants were not required to address other potential discharges unconnected to a "discrete conveyance." *See* 85 Fed. Reg. at 42,234–35.

*Third*, the 2020 Rule specified what "water quality requirements" the State may consider in "review[ing] the manner in which the facility or activity shall be operated or conducted for the purposes of assuring that applicable effluent limitations or other limitations or other applicable water quality requirements will not be violated."  33 U.S.C. § 1341(a)(4).  The 2020 Rule defined the term "water quality requirements" as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the CWA, and state or tribal regulatory requirements for point source discharges into waters of the United States."  40 C.F.R. § 121.1(n) (2020).  This provision was intended to preclude certain unlawful abuses of Section 401 authority, where a State would impose "section 401 certification conditions for hydropower projects that address issues that have nothing to do with the water quality effects of the project's discharges or, sometimes, nothing to do with the effects of the project at all."  NHA 2019 Comment at 18–19 (listing examples); *see infra* pp.23–24 (discussing these examples).

*Fourth*, the 2020 Rule made a variety of other changes to EPA's regulation of the Section 401 certification process.  For example, the 2020 Rule specified nine items that an applicant must include in a certification request submitted to a State, 40 C.F.R. § 121.5(b) (2020), for the certification request to be complete and the statutory timeline for States to act on the request to

begin, 85 Fed. Reg. at 42,243.  It prohibited a State from extending the one-year statutory period of time to act on a Section 401 certification request by requesting a project proponent withdraw and resubmit a certification request.  40 C.F.R. § 121.6(e) (2020).  And it required that any action from a State on a Section 401 certification request be in writing and contain certain information that explains the State's actions.  40 C.F.R. § 121.7 (2020).

*Finally*, the 2020 Rule applied its regulatory changes to the Section 401 certification process on a prospective basis on its effective date, meaning that it did not apply to pending certification requests.  85 Fed. Reg. at 42,210.

As explained more fully below, many applicants submitted certification requests with various States after the effective date of the 2020 Rule—and some of those applications are nearing the one-year deadline for state action.  Such applicants include, notably, multiple members of the Association Plaintiffs.  *Infra* p.20.  These applicants drafted and submitted these certification requests to the States according to the regulatory requirements created by the 2020 Rule, in reliance that the States would apply that rule when taking action on their requests.  *Infra* pp.20–25.

3. On September 27, 2023, EPA published its 2023 Rule to replace the 2020 Rule, *Clean Water Act Section 401 Water Quality Certification Improvement Rule*, 87 Fed. Reg. 35,318 (June 9, 2022), with an effective date of November 27, 2023, *Clean Water Act Section 401 Water Quality Certification Improvement Rule*, 88 Fed. Reg. 66,558 (Sept. 23, 2023) (hereinafter "2023 Rule").  The 2023 Rule imposes various regulations that broaden the regulatory scope of Section 401 certification review, directly contrary to the statute and EPA's prior 2020 Rule.

*First*, contrary to the 2020 Rule, the 2023 Rule significantly broadens the regulatory scope of Section 401 certification review to "the *activity* subject to the Federal license or permit, not merely its potential point source *discharges*."  *Id.* at 66,592 (emphases added).  Specifically, it

provides: "When a certifying authority reviews a request for certification, the certifying authority shall evaluate whether the *activity* will comply with applicable water quality requirements."  40 C.F.R. § 121.3(a) (2023) (emphasis added).  Thus, the 2023 Rule exceeds EPA's authority under the CWA by expanding the regulatory scope of Section 401 certification decisions to any "activity subject to the Federal license or permit, not merely its potential point source discharges."  88 Fed. Reg. at 66,592.  And while the 2023 Rule instructs that "[t]he certifying authority's evaluation is limited to the water quality-related impacts from the activity subject to the Federal license or permit, including the activity's construction and operation," 40 C.F.R. § 121.3(a) (2023), that nevertheless "provid[es] broad authority to . . . review activities subject to a Federal license or permit," as EPA has interpreted "water quality impacts" to include "all of the potential effects of a proposed activity on water quality—direct and indirect, short and long term, upstream and downstream, construction and operation," and has asserted that "protection of water quality includes protection of multiple elements which together make up . . . aquatic life, wildlife, wetlands and other aquatic habitat, vegetation, and hydrology required to maintain the aquatic system."  88 Fed. Reg. at 66,601–02 (citations omitted).

*Second*, and relatedly, the 2023 Rule requires the States to exercise regulatory Section 401 certification authority over discharges from nonpoint sources—again contrary to statute and case law, as well as the 2020 Rule—so long as the "activity" at issue has "a prerequisite potential for a point source discharge into waters of the United States."  88 Fed. Reg. at 66,569.  That is, "once there is a prerequisite potential for a point source discharge into waters of the United States" from the federally permitted project, "then the certifying authority may evaluate and place conditions on the 'activity,' which includes consideration of water quality-related impacts from both point sources and nonpoint sources."  *Id.*  Accordingly, the 2023 Rule amends 40 C.F.R. § 121.1(f)

(2023) to define a "discharge" to mean "any discharge into waters of the United States," whether from a point source or nonpoint source.  *Compare* 88 Fed. Reg. at 66,569, *with* 40 C.F.R. § 121.1(f) (2020) (2020 Rule defining "discharge" as "a discharge from a point source into a water of the United States"); *see also* 33 U.S.C. § 1362(12) (defining "discharge of a pollutant" to mean "any addition of any pollutant to navigable waters *from any point source*") (emphasis added).

  *Third*, the 2023 Rule greatly expands what "water quality requirements" the State considers in a manner that is inconsistent with the CWA, as well as the 2020 Rule.  EPA's 2023 Rule broadened the meaning of "water quality requirements" in its regulations to include "any limitation, standard, or other requirement under sections 301, 302, 303, 306, and 307 of the Clean Water Act, any Federal and state or Tribal laws or regulations implementing those sections, and any other *water quality-related* requirement of state or Tribal law," 40 C.F.R. § 121.1(j) (2023) (emphasis added), "regardless of whether they apply to point or nonpoint source discharges," 88 Fed. Reg. at 66,602.  This allows States to impose broad "certification conditions" beyond those directly applying to water quality, allowing them to impose "conditions that could include building or maintaining fish passage or habitat restoration related to water quality protection," or monitor "non-discharge-related water quality impacts of the activity, such as temperature, flow, riparian buffer conditions, and species impacts*." Id.* at 66,598.  Additionally, the EPA has made clear that while "[p]otential discharges into state or Tribal waters that are not 'waters of the United States' do not trigger the requirement to obtain section 401 certification," certifying authorities are not limited to impacts on United States waters when determining whether a project complies with requirements of state or Tribal law.  *Id.* at 66,570.  "[A] certifying authority must . . . consider whether the activity will comply with 'any other appropriate requirement of State law,'" *id.* at

66,604 (quoting 33 U.S.C. § 1341(d)), and under the 2023 Rule "other appropriate requirements of state or Tribal law include requirements that apply to state or Tribal waters," *id.*

*Fourth*, the 2023 Rule also modifies many procedural aspects of the 2020 Rule.  Instead of requiring nine specific items to be included in a complete certification request, the 2023 Rule includes open-ended requirements, like "[a]ny readily available water quality-related materials." 40 C.F.R. § 121.5(a)(1)(ii) (2023).  The 2023 Rule also requires the project proponent to submit any other unspecified information that may be required by the certifying authority before a request will be considered complete and the statutory timeline begins to run.  *Id.* § 121.5(c).  Further, under the new rule, the certifying authority and the Federal licensing or permitting agency must jointly agree on a reasonable period of time and, absent an agreement, a default timeline of six months applies.  40 C.F.R. § 121.6 (2023).  Unlike the 2020 Rule, moreover, the 2023 Rule does not provide any information or language concerning inspections or enforcement.  88 Fed. Reg. at 66,584, 66,635.

*Finally*, as especially relevant to Plaintiffs' Motion here, EPA applies the 2023 Rule retroactively to "ongoing certification actions."  *Id.* at 66,655.  Specifically, the Rule provides that "[a]s of [November 27, 2023], all actions taken as part of the section 401 certification process must be taken pursuant to the final rule."  *Id.*  "[I]f a certifying authority received a request for certification, prior to [November 27, 2023], and the certifying authority has not acted on the request for certification as of [November 27, 2023], any decision issued by the certifying authority after [November 27, 2023] must comply with the requirements in the final rule (*e.g.*, scope of certification)."  *Id.*  The Rule "does not apply retroactively to actions already taken under the 2020 Rule"—that is, a State's grant, denial, or grant with conditions of a Section 401 certification issued prior to November 27, 2023.  *Id.*  But the Rule *does* apply retroactively to pending requests for

9

certification submitted prior to the effective date of the new rule November 27, 2023, and thus submitted pursuant to, and compliant with, the 2020 Rule, will be evaluated under the new requirements of the 2023 Rule.  *See id.*  The 2023 Rule also allows a State to modify a previously granted certification (with or without conditions) at any point after certification issuance, until the expiration of the federal license or permit, provided the federal agency and certifying authority agree in writing prior to modifying the grant of certification.  40 C.F.R. § 121.10(a) (2023).

### B.    Factual Background

Plaintiffs are the States of Louisiana, Alaska, Arkansas, the Commonwealth of Kentucky, the States of Mississippi, Missouri, Montana, Oklahoma, South Carolina, West Virginia, and Wyoming ("the State Plaintiffs" or "the States"), and the American Petroleum Institute ("API"), the Interstate Natural Gas Association of America ("INGAA"), and the National Hydropower Association ("NHA") (collectively, "the Association Plaintiffs").  Plaintiffs filed their Complaint in this Court, alleging that the 2023 Rule is unlawful in several respects.  Specifically, Plaintiffs assert that the 2023 Rule purports to provide States with the authority to conduct a water quality certification review that exceeds the statutory requirements of Section 401(a) by requiring States: to regulate the entire "activity" proposed in a Section 401(a) certification request, rather than solely discharges into navigable waters; to look beyond the enumerated sections of the CWA cited in Section 401(a) to assess compliance with "any other water quality-related requirement of state or tribal law"; and to impose conditions that bear little relation to water quality to "assure" the activity will comply with applicable water quality requirements.  Further, and as particularly relevant here, Plaintiffs also challenge the 2023 Rule as impermissibly retroactive, as it purports to require States to apply this new regime retroactively, broadening the scope of review for certification requests submitted after the effective date of the 2020 Rule, but before the effective date of the 2023 Rule.

As explained more fully below, many members of the Association Plaintiffs have submitted Section 401 certification requests with States after the effective date of the 2020 Rule but before the effective date of the 2023 Rule, with those requests still pending.  For example, NHA member Patriot Hydro, LLC ("Patriot Hydro"), through a wholly owned subsidiary, has three Section 401 certification requests, as relevant here, pending before New York and New Hampshire.  *Infra* Part II.  Similarly, NHA member Brookfield Power US Holding America Co. ("Brookfield"), through indirect subsidiaries, has six Section 401 certification requests, as relevant here, pending before New Hampshire and one request, as relevant here, pending before Maine. *Infra* Part II.  The 2023 Rule purports to require the States to apply the unlawful standards in 2023 Rule itself, rather than the standards in the 2020 Rule, to these pending certification requests, which will cause irreparable harm, as explained below.  *Infra* Part II.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 65(a), this Court may issue a preliminary injunction to "preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  None of these "prerequisites has a fixed quantitative value.  Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus."  *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (citations omitted).

## ARGUMENT

**I.     Plaintiffs Are Likely To Prevail On The Merits Of Their Claim That The 2023 Rule Is Impermissibly Retroactive**

A. The law treats an agency's attempt to apply retroactively a regulation with great skepticism, reflecting the principle that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). A regulation has a retroactive effect when it "attaches new legal consequences to events completed before its enactment"; "takes away or impairs vested rights"; or "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 274–75 (5th Cir. 2019) (citations omitted; emphasis omitted); *see also Mejia v. Gonzales*, 499 F.3d 991, 997 (9th Cir. 2007); *accord Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 321 (2001) ("familiar considerations of fair notice, reasonable reliance, and settled expectations"). Overall, "[t]he critical question" for determining whether a "challenged rule" is retroactive is whether it "establishes an interpretation that changes the legal landscape," *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002) (citation omitted), and a "rule" that "changes the law in a way that adversely affects a party's prospects for success on the merits of the claim . . . may operate retroactively," *id.* at 860 (citation omitted; brackets omitted).

An agency may not promulgate a retroactive regulation unless the statute empowering the agency to adopt the regulation "authorizes" the agency to engage in "retroactive rulemaking" in "express [statutory] terms." *Bowen*, 488 U.S. at 208. "[A] statutory grant of legislative rulemaking" alone "will not, as a general matter, be understood to encompass the power to promulgate retroactive rules." *Id.* Further, "rules adopted pursuant to rulemaking procedures under the [Administrative Procedure Act ("APA")] are to be prospective in application only," to the exclusion of retroactive application. *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750, 757

(D.C. Cir. 1987), *aff'd,* 488 U.S. 204 (1988) (citations omitted).  If an agency promulgates a retroactive regulation without express statutory authority, that regulation is unlawful.  *Bowen*, 488 U.S. at 208; *accord Nat'l Mining Ass'n*, 292 F.3d at 860.

Finally, and as especially relevant here, a party's submission of an application in reliance on a preexisting legal regime is outcome determinative of the question of whether a new law altering that regime is impermissibly retroactive.  For example, in *Silva Rosa v. Gonzalez*, 490 F.3d 403 (5th Cir. 2007), the Fifth Circuit denied a claim that the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA")—which eliminated the availability of adjustment-of-status relief for certain immigrants subject to removal—was impermissibly retroactive as to a plaintiff who had not yet filed "[a]n adjustment of status application."  *Id.* at 407–10.  Without the filing of such an application, the Fifth Circuit explained, the plaintiff could not have "settled expectations" that pre-IIRIRA regime would apply to himself, so application of the new regime to the plaintiff was not "impermissibly . . . retroactive[ ]."  *Id.*  The Fifth Circuit explained that "the application suffices as a completed transaction," after which point the statute "cannot impermissibly apply to these applications retroactively."  *Id.* at 408 (citation omitted); *see also Valdez-Sanchez v. Gonzalez*, 485 F.3d 1084 (10th Cir. 2007) (concluding that the IIRIRA could not apply retroactively to immigrants who had submitted an application for adjustment-of-status relief pre-IIRIRA); *Faiz-Mohammad v. Ashcroft*, 395 F.3d 799 (7th Cir. 2005) (same); *Sarmiento Cisneros v. U.S. Att'y Gen.*, 381 F.3d 1277 (11th Cir. 2004) (same); *Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003) (same); *accord Nat'l Mining Ass'n*, 292 F.3d at 860 (holding that "rules [that] change the legal landscape as applied to cases that were pending when the regulations were promulgated" are "impermissibly retroactive as applied to pending claims") (citations omitted).

B. Here, the 2023 Rule is impermissibly retroactive, given that it applies retroactively to pending Section 401 certification requests submitted after the effective date of the 2020 Rule but before the effective date of the 2023 Rule, yet EPA does not have retroactive rulemaking authority under the express terms of the CWA.  *Bowen*, 488 U.S. at 208; *accord Nat'l Mining Ass'n*, 292 F.3d at 860.

To begin, the 2023 Rule applies retroactively—specifically to those pending Section 401 certification requests submitted after the effective date of the 2020 Rule but before the effective date of the 2023 Rule.  EPA provides that the 2023 Rule applies whenever "a certifying authority [has] received a request for certification, *prior to the effective date of this final rule*, and the certifying authority has not acted on the request for certification as of the effective date."  88 Fed. Reg. at 66,655 (emphasis added).  Thus, EPA explains, "any decision issued by the certifying authority" with respect to such pending certification requests "after the effective date of this final rule must comply with the requirements in the final rule (*e.g.,* scope of certification)."  *Id.*  This explicit language in the 2023 Rule's preamble demonstrates EPA's "final and binding interpretation," *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 689 n.2 (5th Cir. 2000) (citing *Chem. Waste Mgmt., Inc. v. EPA*, 869 F.2d 1526, 1533 (D.C. Cir. 1989)), or its "ultimate decision on [the] issue" of the 2023 Rule's retroactivity, *Chem. Waste*, 869 F.2d at 1533.

The 2023 Rule's retroactive application to these pending certification requests is retroactive in the "disfavored sense."  *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006). Applying the 2023 Rule to requests submitted after the 2020 Rule but before the 2023 Rule would "take[ ] away or impair[ ] vested rights" of these project applicants, or "create[ ] a new obligation, impose[ ] a new duty, or attach[ ] a new disability, in respect to transactions or considerations already past."  *Germain*, 920 F.3d at 274–75.  Indeed, the project applicants, including members

14

of the Association Plaintiffs, who have submitted certification requests to EPA after promulgation of the 2020 Rule but before promulgation of the 2023 Rule have vested rights in the application of the 2020 Rule just like the hypothetical immigrants discussed in *Silva Rosa* who "actually submit[ted] an application for adjustment of status before IIRIRA," rendering their applications "'completed transaction[s]'" with "settled expectations" that prohibit application of the 2023 Rule "to these applications retroactively."  490 F.3d at 408.

Specifically, a review of the application of the 2023 Rule to these pending Section 401 certification requests shows that the application of this Rule would "change[ ] the legal landscape" and "change[ ] the law in a way that adversely affects [the project applicants'] prospects for success on the merits of the[ir] [Section 401 certification requests]."  *Nat'l Mining Ass'n*, 292 F.3d at 859–60.  First, the 2023 Rule requires review of the project applicants' entire "*activity* subject to the Federal license or permit, not merely its potential point source *discharges*" that would have been subject to review under the 2020 Rule.  88 Fed. Reg. at 66,592 (emphases added); *see also* 40 C.F.R. § 121.3(a) (2023).  Second, the 2023 Rule purports to expand the States' Section 401 certification authority to "any discharge into waters of the United States," encompassing both point source discharges and nonpoint source discharges, 40 C.F.R. § 121.1(f) (2023), rather than only "a discharge from a point source into a water of the United States" under the 2020 Rule, 40 C.F.R. § 121.1(f) (2020).  And third, the 2023 Rule broadens the scope of the "water quality requirements" that reviewing authorities must consider and conditions they may impose on the project applicants—including requirements related to State and Tribal waters—thus greatly expanding the criteria for certification and allowing States to impose far more conditions on the Section 401 certification than under the 2020 Rule.  88 Fed. Reg. at 66,598; *see* Shresta Decl., Ex. B, Nat'l Hydropower Ass'n, *Comments on EPA's Clean Water Act Section 401 Water Quality Certification*

*Improvement Rule* at 18–19 (Aug. 5, 2022) ("NHA 2022 Comment"); Olsheski Decl. ¶¶ 12–15, 22–25, 32–35.

EPA has no statutory authority to promulgate retroactive rules, thus the 2023 Rule's retroactive effect is unlawful. *Bowen*, 488 U.S. at 208; *accord Nat'l Mining Ass'n*, 292 F.3d at 860. Congress did not "authorize[ ]" the EPA to engage in any "retroactive rulemaking" with "express terms" in the CWA. *Bowen*, 488 U.S. at 208; *see Sierra Club v. Whitman*, 285 F.3d 63, 68 (D.C. Cir. 2002) ("The relevant provisions of the Clean Air Act contain no language suggesting that Congress intended to give EPA the unusual ability to implement rules retroactively.") (citation omitted). Further, EPA does not possess retroactive rulemaking authority under the APA either. *Georgetown Univ. Hosp.*, 821 F.2d at 757; 5 U.S.C. § 551(4). So, given the absence of any statutory authority for EPA to engage in retroactive rulemaking, EPA cannot apply the 2023 Rule retroactively to pending Section 401 certification requests submitted to the States after the September 11, 2020, effective date of the 2020 Rule, but before the effective date of the 2023 Rule. *Bowen*, 488 U.S. at 208; *accord Georgetown Univ. Hosp.*, 821 F.2d at 757; *Sierra Club*, 285 F.3d at 68.

## II.    Plaintiffs Will Suffer Irreparable Harm In The Absence Of An Injunction If The 2023 Rule Is Applied To Pending Section 401 Certification Applications

A party "seeking a preliminary injunction must [also] show that irreparable injury is 'likely' absent an injunction." *Missouri v. Biden*, 83 F.4th 350, 392 (5th Cir. 2023) (citation omitted). Compliance with a rule that is "later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (citation omitted); *Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers).

Here, multiple members of the Association Plaintiffs have pending Section 401 certification requests that they submitted with various States after the effective date of the 2020 Rule but before the effective date of the 2023 Rule. Shresta Decl. ¶¶ 4–30; Decl. of Michael Purdie ("Purdie Decl.") ¶¶ 8–9 (stating that Patriot Hydro and Brookfield are NHA members); Olsheski Decl. ¶¶ 8–9; Decl. of Luke T. Anderson, Great Lakes Hydro America, LLC ("GLHA Decl.") ¶¶ 12–13; Decl. of Luke T. Anderson, Rumford Falls Hydro LLC ("RFH Decl.") ¶¶ 7–8. Each of these members will suffer irreparable harm from the unlawful retroactive application of the 2023 Rule to their requests. Olsheski Decl. ¶¶ 11–14; GLHA Decl. ¶¶ 15–19; RFH Decl. ¶¶ 10–14.

For example, Patriot Hydro (through a wholly owned subsidiary) submitted a Section 401 certification request with New York on August 3, 2023, requesting a Section 401 certification related to the Pyrites Hydroelectric Project. Olsheski Decl. ¶ 8; *see also id.* ¶¶ 18, 28 (providing additional examples of pending requests). Given that Patriot Hydro submitted its request while the 2020 Rule was legally operative, it tailored its request to that rule. *Id.* ¶ 11. Now, however, New York must evaluate the request under the 2023 Rule, which will significantly harm Patriot Hydro by subjecting the requests to a standard that exceeds EPA's statutory authority and imposes more expansive requirements upon the States in evaluating the requests than the one under which Patriot Hydro submitted its request; by significantly undermining its prospects of obtaining approval of the request (including timely approval); and by imposing significant, additional unrecoverable compliance costs on Pyrites. *Id.* ¶ 12.

Specifically, Patriot Hydro demonstrated in its request how the *discharge* into navigable waters from its project would not violate applicable water quality standards, 40 C.F.R. § 121.3 (2020), explaining that the studies performed in support of the Federal Energy Regulatory Commission ("FERC") license and Water Quality Certification applications demonstrate that the

Pyrites Project's waters currently meet New York State water quality standards under existing Pyrites Project operation per the existing FERC license.  Olsheski Decl. ¶ 13.  Yet, under the 2023 Rule, New York must analyze how the entire "*activity* subject to the Federal license or permit," complies with the new broad definition of applicable water-quality requirements.  88 Fed. Reg. at 66,592 (emphasis added); *see also* 40 C.F.R. § 121.3(a) (2023); Olsheski Decl. ¶ 13.  That greatly expanded scope of review changes the applicable law by subjecting the requests to a standard that exceeds EPA's statutory authority and imposes more expansive requirements upon the States in evaluating the requests, which significantly prejudices Patriot Hydro, given its expenditure of substantial resources to prepare its request in reliance on the prior 2020 Rule, which was consistent with the CWA.  Olsheski Decl. ¶ 13.  Separately, application of the 2023 Rule also adversely affects Patriot Hydro by undermining its prospects for success in obtaining certification. *Nat'l Mining Ass'n*, 292 F.3d at 859–60; Olsheski Decl. ¶ 13.  If New York State denies the request, Patriot Hydro will have to request a new certification tailored to the 2023 Rule, requiring significant unrecoverable expenditures.  *Texas,* 829 F.3d at 433; *Phillip Morris USA*, 561 U.S. at 1304 (Scalia, J., in chambers); Olsheski Decl. ¶ 13.  And because the State is now required to evaluate the requests under the 2023 Rule, if new information is required by the State to evaluate the requests, that would need to be submitted now for evaluation under the pending requests.  40 C.F.R. § 121.5(c) (2023).

Further, Patriot Hydro analyzed in its request only "discharge[s] from [ ] point source[s] into a water of the United States" with its project, consistent with the 2020 Rule, 40 C.F.R. § 121.1(f) (2020), stating that that the studies performed in support of the FERC license and Water Quality Certification applications demonstrate that the Pyrites Project waters currently meet New York State water quality standards under existing Pyrites Project operation per the existing FERC

license.  Olsheski Decl. ¶ 14.  However, under the 2023 Rule, New York may now "evaluate and place conditions on the 'activity,' which includes consideration of water quality-related impacts from both point sources *and nonpoint sources*."  88 Fed. Reg. at 66,569 (emphasis added); Olsheski Decl. ¶ 14.  That changed legal landscape adversely affects Pyrites by imposing a standard that exceeds EPA's statutory authority and imposes more expansive requirements upon the States than the prior standard, which significantly prejudices Pyrites, given its expenditure of substantial resources to prepare its request in reliance on the prior 2020 Rule.  Olsheski Decl. ¶ 14.  Separately, application of the 2023 Rule also adversely affects Pyrite's prospects for securing approval of its request from New York State.  *Nat'l Mining Ass'n*, 292 F.3d at 859–60; Olsheski Decl. ¶ 14.  And should New York State reject Pyrites' request, requiring resubmittal, that will again require the expenditure of significant unrecoverable costs, *Texas*, 829 F.3d at 433; *Phillip Morris USA*, 561 U.S. at 1304 (Scalia, J., in chambers), including because nonpoint sources are "numerous and more technologically difficult to regulate," *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 550 F.3d 778, 780 (9th Cir. 2008); Olsheski Decl. ¶ 14.

Finally, under the 2020 Rule and the CWA, New York could only impose conditions on Patriot Hydro's certification related to provisions of state law that contain requirements for point source discharges into waters of the United States.  Olsheski Decl. ¶ 15.  This properly limited the universe of conditions that Patriot Hydro expected New York to be able to impose on its certification, meaning that any approved certification that Patriot Hydro received would likely be appropriately tailored.  *Id.* ¶ 15.  Under the 2023 Rule, however, the universe of conditions that New York may impose is significantly broader, extending to "any other *water quality-related* requirement of state or Tribal law," even those that related to non-United States waters. 40 C.F.R. § 121.1(j) (2023) (emphasis added).  Thus, Patriot Hydro is at risk of New York imposing

burdensome, absurd, or requirements unrelated to water quality on its project certification.  *See Germain*, 920 F.3d at 274–75 ("new obligation[s]," "new dut[ies]," and "new disabilit[ies]" related "to transactions or considerations already past"); Olsheski Decl. ¶ 15.  For example, New York now has the authority under the 2023 Rule to impose conditions like: "building or maintaining fish passage or habitat restoration"; monitoring "non-discharge-related water quality impacts of the activity, such as temperature, flow, riparian buffer conditions, and species impacts" far beyond their projects discharge impacts, 88 Fed. Reg. at 66,598; constructing public recreational facilities; releasing water to enhance boating opportunities; supporting "a feral pig task force . . . to trap and kill feral pigs; or the payment "for annual fish stocking."  NHA 2019 Comment at 18–19 (discussing actual examples of conditions imposed under the pre-2020 Rule regime).  Complying with those conditions, available to New York solely under the 2023 Rule, but not the 2020 Rule, would impose substantial and unrecoverable costs on Patriot Hydro as well.  *Texas,* 829 F.3d at 433; *Phillip Morris USA*, 561 U.S. at 1304 (Scalia, J., in chambers).

As with Patriot Hydro, NHA member Brookfield (through indirect subsidiaries) has similarly submitted water quality certification requests with New Hampshire and Maine after the effective date of the 2020 Rule, but prior to the effective date of the 2023 Rule, with those requests still pending.  GLHA Decl. ¶¶ 12–13; RFH Decl. ¶¶ 7–8.  Those States too must evaluate Brookfield's certification requests under the 2023 Rule.  GLHA Decl. ¶ 16; RFH Decl. ¶ 11.  And as with Patriot Hydro, such application will significantly harm Brookfield by subjecting the requests to a standard that exceeds EPA's statutory authority and imposes more stringent requirements upon the States in evaluating the requests than the one under which it submitted the requests; by significantly undermining its prospects of obtaining approval of the requests (including timely approval); and by imposing significant, additional unrecoverable compliance

costs on it.  *Nat'l Mining Ass'n*, 292 F.3d at 859–60; *Texas,* 829 F.3d at 433; *Phillip Morris USA*, 561 U.S. at 1304 (Scalia, J., in chambers); GLHA Decl. ¶¶ 16–19; RFH Decl. ¶¶ 11–14.

## III.    The Balance Of Equities And Public Interest Favor Granting Injunctive Relief

The balance of the equities and public interest factors also weigh in favor of granting Plaintiffs' Motion For Temporary Injunction.  When the Government is the opposing party, these two factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  "[T]he public interest always is served when public officials act within the bounds of the law and respect the rights of the citizens they serve."  *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 93 (5th Cir. 1992) (citation omitted). Moreover, federal agencies like the EPA "'literally ha[ve] no power to act'—including under its regulations—unless and until Congress authorizes it to do so by statute," *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) (citation omitted), and so an agency "cannot claim an [ ] injury from being enjoined against an action that it has no statutory authorization to take," *Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021).

Here, the CWA does not "authorize[ ]" EPA to engage in "retroactive rulemaking," whether in "express [statutory] terms" or otherwise, *Bowen*, 488 U.S. at 208; *see Sierra Club*, 285 F.3d at 68, so EPA "has no power to act" by imposing retroactive certification requirements on pending certification requests, *Cruz*, 596 U.S. at 301.  Thus, EPA has no authority or interest in continuing "an action that it has no statutory authorization to take," *Texas v. Biden*, 10 F.4th at 558, and the public interest is best served by a temporary injunction that requires EPA to follow the law, *Nobby Lobby, Inc.*, 970 F.2d at 93, all supporting this Court enjoining EPA from retroactively imposing the Rule on pending certification requests.

**CONCLUSION**

The Court should preliminarily enjoin the 2023 Rule as to pending Section 401 certification applications submitted to the States after the September 11, 2020 effective date of the 2020 Rule, but before the effective date of the 2023 Rule.

Dated: December 4, 2023                          Respectfully submitted,

JEFF LANDRY
  ATTORNEY GENERAL OF LOUISIANA

/s/ Joseph S. St. John
Elizabeth B. Murrill (LSB 20685)
  *Solicitor General*
Joseph S. St. John (LSB 36682)
  *Deputy Solicitor General*
Tracy Short (LSB 23940)
  *Assistant Attorney General*
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
shortt@ag.louisiana.gov
*Counsel for State of Louisiana*

TREG R. TAYLOR
  ATTORNEY GENERAL OF ALASKA

/s/ Cameron Jimmo
Cameron Jimmo*
  *Senior Assistant Attorney General*
ALASKA DEPARTMENT OF LAW
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
(907) 269-6457
cameron.jimmo@alaska.gov
*Counsel for State of Alaska*

TIM GRIFFIN
  ARKANSAS ATTORNEY GENERAL

/s/ Michael A. Cantrell
Michael A. Cantrell*
  *Assistant Solicitor General*
OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2401
Michael.Cantrell@ArkansasAG.gov
*Counsel for the State of Arkansas*

DANIEL CAMERON
ATTORNEY GENERAL OF KENTUCKY

/s/ Lindsey Keiser
Lindsey Keiser*
  *Assistant Attorney General*
KENTUCKY OFFICE OF THE ATTORNEY
GENERAL
700 Capital Avenue, Suite 118
Frankfort, Kentucky
(502) 696-5517
*Counsel for the Commonwealth of Kentucky*

AUSTIN KNUDSEN
  ATTORNEY GENERAL OF MONTANA

/s/ Christian B. Corrigan
Christian B. Corrigan*
  *Solicitor General*
Peter M. Torstensen, Jr.
  *Deputy Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov
*Counsel for State of Montana*

GENTNER DRUMMOND
  ATTORNEY GENERAL OF OKLAHOMA

/s/Garry M. Gaskins, II
Garry M. Gaskins, II*
  *Solicitor General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov
*Counsel for State of Oklahoma*

LYNN FITCH
  ATTORNEY GENERAL OF MISSISSIPPI

/s/ Justin Matheny
Justin L. Matheny*
  Deputy Solicitor General
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205
Justin.Matheny@ago.ms.gov
Counsel for State of Mississippi

ANDREW BAILEY
  ATTORNEY GENERAL OF MISSOURI

/s/ Josh Divine
Josh Divine*
  Solicitor General
MISSOURI ATTORNEY
  GENERAL'S OFFICE
207 West High St.
Jefferson City, MO 65101
(573) 751-8870
Josh.Divine@ago.mo.gov
Counsel for State of Missouri

ALAN WILSON
  ATTORNEY GENERAL OF SOUTH CAROLINA

/s/ Thomas T. Hydrick
Thomas T. Hydrick*
  Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov
Counsel for the State of South Carolina

PATRICK MORRISEY
  ATTORNEY GENERAL OF WEST VIRGINIA

/s/ Michael R. Williams
Lindsay See*
  Solicitor General
Michael R. Williams*
  Principal Deputy Solicitor General
OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov
Counsel for State of West Virginia

BRIDGET HILL
  ATTORNEY GENERAL OF WYOMING

s/ Abigail Boudewyns
Abigail Boudewyns*
  Senior Assistant Attorney General
Travis Jordan*
  Senior Assistant Attorney General
WYOMING ATTORNEY
  GENERAL'S OFFICE
109 State Capitol
200 West 24th Street
Cheyenne, WY 82002
(307) 777-6946
abigail.boudewyns@wyo.gov
travis.jordan@wyo.gov
Counsel for State of Wyoming

/s/ Jeremy T. Grabill
Jeremy T. Grabill (Bar #34924)
Margaret Manning (Bar #39268)
PHELPS DUNBAR LLP
Canal Place, 365 Canal Street, Suite 2000
New Orleans, LA 70130
(504) 566-1311
jeremy.grabill@phelps.com
margaret.manning@phelps.com
*Counsel for American Petroleum Institute,
Interstate Natural Gas Association of
America, and National Hydropower
Association*

Misha Tseytlin*
Kevin M. LeRoy*
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(608) 999-1240
misha.tseytlin@troutman.com

Charles R. Sensiba*
TROUTMAN PEPPER HAMILTON
SANDERS LLP
401 Ninth Street, NW, Suite 1000
Washington, DC 20004
(202) 274-2850
charles.sensiba@troutman.com

Abbey M. Thornhill*
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1209
abbey.thornhill@troutman.com
*Counsel for National Hydropower
Association*

George P. (Trey) Sibley, III (Va. Bar No.
48773)*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
(804) 788-8262
gsibley@hunton.com

Deidre G. Duncan (DC Bar No. 461548)*
Karma B. Brown (DC Bar No. 479774)*
Erica Peterson (DC Bar No. 1686244)*
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500
dduncan@hunton.com
kbbrown@hunton.com
epeterson@hunton.com
*Counsel for American Petroleum Institute and
Interstate Natural Gas Association of
America*

* To be admitted *pro hac vice*