UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **STATE OF LOUISIANA ET AL** | **CASE NO.  2:23-CV-01714** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **U S ENVIRONMENTAL PROTECTION AGENCY ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING AND ORDER

Before the Court is a "Motion for Preliminary Injunction" (Doc. 2) wherein, the States of Louisiana, Alaska, Arkansas, the Commonwealth of Kentucky, the States of Mississippi, Missouri, Montana, Oklahoma, South Carolina, West Virginia, and Wyoming (the "States"), and the American Petroleum Institute ("API"), the Interstate Natural Gas Association of America ("INGAA") and the National Hydropower Association ("NHA") (collectively referred to as the "Plaintiffs") move to enjoin Defendants[1] in their official capacities from applying the "2023 Rule" to those pending Section 401 certification requests submitted after the effective date of the immediately prior rule, but before the effective date of the 2023 Rule.

A hearing was held on March 5, 2024, and after hearing arguments of counsel, the Court took the matter under advisement.

### I.    INTRODUCTION

Congress enacted the CWA, 33 U.S.C. §§ 1251-1388, "to restore and maintain the

---

[1] There is also a pending before the Magistrate Judge a Motion to Intervene as Defendants filed by National Wildlife Federation and American Whitewater (collectively the "Conservation Groups"), Doc. 86.

chemical, physical, and biological integrity of the Nation's waters," *id*. § 1251(a), while declaring a policy to "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution," *id*. § 1251(b).

Section 401 of the Act, entitled "Certification," requires that:

> Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate … that any such discharge will comply with the applicable provisions of sections [301, 302, 303, 306, and 307 of this Act].

33 U.S.C. § 1341(a)(1).

If a federal license or permit will authorize an activity that may result in discharge into a navigable water, the federal license or permit applicant must obtain a water quality certification from the State in which the discharge "originates" before the federal license or permit may issue. 33 U.S.C. § 1341(a)(1). Section 401 is a cornerstone of the "cooperative federalism" framework of the CWA, providing an important role for States to participate in an otherwise exclusively federal licensing or permitting process. See *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 704 (1994) ("*PUD No. 1*"); see also *Arkansas v. Oklahoma*, 503 U.S. 91, 103 (1992); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 490 (1987).

When the relevant State receives a request for a § 401 certification from an applicant for a federal license or permit—such as a license or relicense to build or operate a hydropower project—the State must determine whether "any such discharge [from the project] will comply with" various effluent and water quality standards promulgated

pursuant to specified CWA provisions—namely § § 301, 302, 303, 306, and 307 of the Act, codified at 33 U.S.C. §§ 1311, 1312, 1313, 1316, and 1317. 33 U.S.C. § 1341(a)(1); see generally Decl. of Sahara Shresta ("Shresta Decl."), Ex. A, Nat'l Hydropower Ass'n, *Comments on EPA's Proposal for Updating Regulations of Water Quality Certification* at 6 (Oct. 21, 2019) ("NHA 2019 Comment"); Decl. of David Olsheski, ("Olsheski Decl.") ¶¶ 7, 17, 27; see also *S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 385–86 (2006). Subsection 401(d) provides that "[a]ny certification" provided by a certifying authority "shall set forth any effluent limitations and other limitations, and monitoring requirements" necessary to ensure compliance with applicable provisions of the CWA as well as "with any other appropriate requirement of State law set forth in such certification." *Id*. § 1341(d).

When a party submits a request for a certification, the State may grant the request, deny the request, or grant the request with certain conditions. See *id*. If the State "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of [Subsection 401(a)] shall be waived." 33 U.S.C. § 1341(a)(1).

EPA first promulgated water-quality certification regulations in 1971 to implement § 21(b) of the Water Quality Improvement Act of 1970, which had required States to certify that "such activity will be conducted in a manner which will not violate applicable water quality standards." Pub. L. No. 91-224, 84 Stat. 91, 108 (1970) (emphases added). Consistent with § 21(b), EPA's 1971 regulations required a certification from a State to include a statement that there is a "reasonable assurance that the activity will be conducted

in a manner which will not violate applicable water quality standards." 40 C.F.R. § 121.2(a) (1971) (emphases added). Shortly after EPA promulgated these regulations, Congress enacted § 401 with the 1972 CWA amendments and modified the applicable statutory language to focus on "discharge[s]," Pub. L. No. 92-500, 86 Stat. 816, 877 (1972)—not "activit[ies]," 40 C.F.R. § 121.2(a) (1971).

The EPA did not update the 1971 regulations to match the new statutory language until September 11, 2020, when it finalized the 2020 Rule. Clean Water Act § 401 Certification Rule, 85 Fed. Reg. 42,210 (July 13, 2020). The 2020 Rule "establish[ed] the scope of § 401 as protecting the quality of waters of the United States from point source discharges associated with federally licensed or permitted activities by requiring compliance with water quality requirements, as defined in this final rule." 85 Fed. Reg. at 42,229.

Of relevance are five features of the 2020 Rule:

*First*, the 2020 Rule provided that "[t]he scope of a . . . section 401 certification is limited to assuring that a discharge . . . will comply with water quality requirements." 40 C.F.R. § 121.3 (2020). Thus, under the 2020 Rule, the scope of certification in EPA's regulations was amended to reflect the CWA's major change in statutory language from the Water Quality Improvement Act of 1970, narrowing the certification requirement from a State certifying that an "activity . . . will not violate applicable water quality standards," 84 Stat. at 108 (emphasis added), to a certification from a State "that any such discharge will comply with the applicable provisions" of various CWA sections related to water quality standards, 33 U.S.C. § 1341(a)(1) (emphasis added). Thus, in the § 401 certification

process, the State may only "certify that the discharge resulting from the proposed federally licensed or permitted project will comply with the CWA" and may not impose "certification conditions that address water quality impacts from any aspect of the construction or operation of the activity as a whole." 85 Fed. Reg. at 42,232. The focus on the "discharge," rather than the "activity," prohibits an "expan[sion]" of "section 401 regulatory authority," *id*., by prohibiting States from asserting the authority to issue a "certification [that] broadly cover[s] impacts from the entire activity," *id*. at 42,230.

*Second*, the 2020 Rule defined "discharge" to mean "a discharge from a point source into a water of the United States," as opposed to a nonpoint source. 40 C.F.R. § 121.1(f) (2020) (emphasis added). Under the 2020 Rule, a certifying authority's review was limited to the effects of a discharge from a "discrete" or "discernable" conveyance, meaning that § 401 applicants were not required to address other potential discharges unconnected to a "discrete conveyance." See 85 Fed. Reg. at 42,234–35.

*Third*, the 2020 Rule specified what "water quality requirements" the State may consider in "review[ing] the manner in which the facility or activity shall be operated or conducted for the purposes of assuring that applicable effluent limitations or other limitations or other applicable water quality requirements will not be violated." 33 U.S.C. § 1341(a)(4). The 2020 Rule defined the term "water quality requirements" as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the CWA, and state or tribal regulatory requirements for point source discharges into waters of the United States." 40 C.F.R. § 121.1(n) (2020). This provision was intended to preclude certain unlawful abuses of § 401 authority, where a State would impose "section 401 certification conditions for hydropower

projects that address issues that have nothing to do with the water quality effects of the project's discharges or, sometimes, nothing to do with the effects of the project at all." NHA 2019 Comment at 18–19 (listing examples).

*Fourth*, the 2020 Rule made a variety of other changes to EPA's regulation of the § 401 certification process. For example, the 2020 Rule specified nine items that an applicant must include in a certification request submitted to a State, 40 C.F.R. § 121.5(b) (2020), for the certification request to be complete and the statutory timeline for States to act on the request to begin, 85 Fed. Reg. at 42,243. It prohibited a State from extending the one-year statutory period of time to act on a § 401 certification request by requesting a project proponent withdraw and resubmit a certification request. 40 C.F.R. § 121.6(e) (2020). And it required that any action from a State on a § 401 certification request be in writing and contain certain information that explains the State's actions. 40 C.F.R. § 121.7 (2020).

Lastly, the 2020 Rule applied its regulatory changes to the § 401 certification process on a prospective basis on its effective date, meaning that it did not apply to pending certification requests. 85 Fed. Reg. at 42,210.

EPA reviewed the 2020 Rule in response to an Executive Order issued by President Biden, see 88 Fed. Reg. 66558, 66559 (September 27, 2023) (citing Executive Order 13,990, 86 Fed. Reg. 7037 (Jan. 25, 2021), and issued notice in June 2021 that it intended to reconsider and revise the 2020 Rule, 86 Fed. Reg. 29541 (June 2, 2021). EPA published a proposed rule revising the 2020 Rule and sought public comment. 87 Fed. Reg. 35318 (June 9, 2022).

On September 27, 2023, the EPA promulgated the CWA, § 401 Water Quality Certification Improvement Rule (the "2023 Rule"), which took effect on November 27, 2023. 88 Fed. Reg. 66558 (Sept. 27, 2023). The 2023 Rule addressed the scope of certification review and the contents of certification requests.

Plaintiffs complain that EPA impermissibly expanded State certification authority under § 401 through the 2023 Rule. Plaintiffs contend that the 2023 Rule conflicts with the prior EPA rule and the CWA, and argues that the EPA applied the new 2023 Rule retroactively to already pending § 401 certification requests. For purposes of the instant Motion for Preliminary Injunction, Plaintiffs argue that the 2023 Rule is unlawful and seek only to enjoin the application of the 2023 Rule to those pending § 401 certification requests submitted after the effective date of the immediately prior 2020 Rule, but before the effective date of the 2023 Rule.

## II.   LAW AND ANALYSIS

As to the preliminary injunction, Plaintiffs argue that applying the 2023 Rule to the pending requests would be unlawful and would cause irreparable harm to Plaintiffs. Plaintiffs contend that the EPA has no statutory authority to promulgate retroactive regulations, and the retroactive application of the 2023 Rule to these pending requests would impair the vested rights and reasonable expectation of these requesters.

Plaintiffs submit that many applicants submitted certification requests after the effective date of the 2020 Rule and some of those applicants are nearing the one-year deadline for state action. These applicants drafted and submitted their certification requests to the States according to the regulatory requirements created by the 2020 Rule, and relied

on the States to apply the 2020 Rule. Of note, Plaintiffs contend that the 2023 Rule significantly broadens the regulatory scope of § 401 certification review to "the activity subject to the Federal license or permit, not merely its potential point source discharges." *Id.* at 66,592.

Specifically, the 2023 Rule requires the certifying authority to evaluate whether the *activity* will comply with the applicable water quality requirements, whereas the prior 2020 Rule required the certifying authority's evaluation to be "limited to assuring that a *discharge* . . . will comply with water quality requirements." 40 C.F.R. § 121.3 (2020). Thus, Plaintiff's argue that the 2023 Rule exceeds EPA's authority under the CWA by expanding the regulatory scope of § 401 certification decisions to any "activity subject to the Federal license or permit, not merely its potential point source discharges." 88 Fed. Reg. at 66,592.

Plaintiffs point out that the 2023 Rule instructs that "[t]he certifying authority's evaluation is limited to the water quality-related impacts from the activity subject to the Federal license or permit, including the activity's construction and operation," 40 C.F.R. § 121.3(a) (2023), but "provid[es] broad authority to . . . review activities subject to a Federal license or permit." Plaintiffs complain that EPA has interpreted "water quality impacts" to include "all of the potential effects of a proposed activity on water quality—direct and indirect, short and long term, upstream and downstream, construction and operation," and has asserted that "protection of water quality includes protection of multiple elements which together make up . . . aquatic life, wildlife, wetlands and other aquatic habitat,

vegetation, and hydrology required to maintain the aquatic system." 88 Fed. Reg. at 66,601–02 (citations omitted).

Plaintiffs further complain that the 2023 Rule requires the States to exercise regulatory § 401 certification authority over discharges from nonpoint sources so long as the "activity" at issue has "a prerequisite potential for a point source discharge into waters of the United States." 88 Fed. Reg. at 66,569. Thus, "once there is a prerequisite potential for a point source discharge into waters of the United States" from the federally permitted project, "then the certifying authority may evaluate and place conditions on the 'activity,' which includes consideration of water quality-related impacts from both point sources and nonpoint sources." *Id*. Simply put, Plaintiffs maintain that the 2023 Rule amends 40 C.F.R. § 121.1(f) 2023) to define a "discharge" to mean "any discharge into waters of the United States," whether from a point source or nonpoint source. Compare 88 Fed. Reg. at 66,569, with 40 C.F.R. § 121.1(f) (2020) (2020 Rule defining "discharge" as "a discharge from a point source into a water of the United States"); see also 33 U.S.C. § 1362(12) (defining "discharge of a pollutant" to mean "any addition of any pollutant to navigable waters from any point source") (emphasis added).

Next, Plaintiffs complain that the 2023 Rule greatly expands what "water quality requirements" the State considers in a manner that is inconsistent with the CWA, as well as the 2020 Rule. Plaintiffs argue that the EPA's 2023 Rule broadens the meaning of "water quality requirements" in its regulations to include "any limitation, standard, or other requirement under §§ 301, 302, 303, 306, and 307 of the Clean Water Act, any Federal and state or Tribal laws or regulations implementing those sections, and any other water

quality-related requirement of state or Tribal law," 40 C.F.R. § 121.1(j) (2023), "regardless of whether they apply to point or nonpoint source discharges," 88 Fed. Reg. at 66,602. Plaintiffs asserts that this allows States to impose broad "certification conditions" beyond those directly applying to water quality, allowing them to impose "conditions that could include building or maintaining fish passage or habitat restoration related to water quality protection," or monitor "non-discharge-related water quality impacts of the activity, such as temperature, flow, riparian buffer conditions, and species impacts." *Id*. at 66,598.

Plaintiffs also complain that the 2023 Rule modifies procedural aspects of the 2020 Rule. Specifically, Rule 2023 (1) includes open-ended requirements, as opposed to the 2020 Rule that required nine specific items to be included in a complete certification request, (2) requires the project proponent to submit any other unspecified information that may be required by the certifying authority before a request will be considered complete and the statutory timeline begins to run. *Id.* § 121.5(c), (3) requires the Federal licensing or permitting agency to jointly agree on a reasonable period of time, and absent an agreement, a default timeline of six months applies. 40 C.F.R. § 121.6 (2023).

Finally, Plaintiffs' main concern is that EPA applies the 2023 Rule retroactively to "ongoing certification actions", *Id.* at 66.655, i.e., any pending requests for certification submitted prior to November 27, 2023, will be evaluated under the Rule 2023 requirements, and a State may modify a previously granted certification at any point after certification issuance, until the license or permit expires, if both the federal agency and state certifying authority agree in writing prior to modifying the grant of certification. 40 C.F.R. § 121.10(a)(2023).

Plaintiffs argue that Rule 2023 is unlawful as it: (1) provides the States with the authority to conduct a water quality certification review that exceeds the statutory requirements of § 401 by requiring States to regulate the entire "activity" rather than "discharges" into navigable waters; and (2) is impermissibly retroactive.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 65(a), this Court may issue a preliminary injunction to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). None of these "prerequisites have a fixed quantitative value. Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (citations omitted).

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). The Fifth Circuit has "cautioned repeatedly" that a preliminary injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (citation omitted). Irreparable injury is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Texas v. United States*, 86 F. Supp. 3d 591, 674 (S.D. Tex. 2015) (citation

omitted). In assessing likelihood of success on the merits, the deferential Administrative Procedure Act ("APA") standard of review applies. See 5 U.S.C. §§ 701-06; *Motor Vehicle Mfrs. Ass n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

    (a)    *Likelihood of success on the merits*

Plaintiffs argue that they are likely to prevail on the merits of their claim that the 2023 Rule is impermissibly retroactive. Conversely, Defendants argue that Plaintiffs will not be successful on the merits because applying the 2023 Rule to future certification decisions taken after the effective date is not impermissibly retroactive.

The law treats an agency's attempt to apply retroactively a regulation with great skepticism, reflecting the principle that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). A regulation has a retroactive effect when it "attaches new legal consequences to events completed before its enactment"; "takes away or impairs vested rights"; or "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Landgraf v. United* States, 511 U.S. 244, 260-70 (1994); *Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 274–75 (5th Cir. 2019) (citations omitted; emphasis omitted); see also *Mejia v. Gonzales*, 499 F.3d 991, 997 (9th Cir. 2007); accord *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 321 (2001) ("familiar considerations of fair notice, reasonable reliance, and settled expectations").

To determine whether a new regulation can be applied retroactively, courts apply the two-part test set forth in *Landgraf v. United States*, 511 U.S. 244, 269-70 (1994). *Handley v. Chapman*, 587 F.3d 273, 283 (5th Cir. 2009).  Defendants remark that § 401

does not address the temporal reach of its implementing regulations, and EPA is not asserting statutory authority to adopt retroactive regulations. Thus, it argues that the Court must determine whether application of the 2023 Rule to existing certification requests would be impermissibly retroactive.

The Court's inquiry is "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before" the 2023 Rule was enacted. *Fernandez Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 2428 (2006). In making this determination, courts take "sound guidance" from "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270.

Plaintiffs argue that the 2023 Rule applies retroactively because the preamble to the Rule states that the 2023 Rule applies whenever "a certifying authority [has] received a request for certification, prior to the effective date of this final rule, and the certifying authority has not acted on the request for certification as of the effective date." 88 Fed. Reg. at 66,655. Additionally, Plaintiff notes that EPA explains that "any decisions issued by the certifying authority" with respect to such pending certification requests "after the effective date of this final rule must comply with the requirements in the final rule (*e.g.*, scope of certification)." *Id.*

Plaintiffs argue that the 2023 Rule requires review of the project applicants' entire "activity subject to the Federal license or permit, not merely its potential point source discharges. 88 Fed. Reg. at 66,592; see also C.F.R. § 121.3(a) (2023).

Plaintiffs reiterate that the 2023 Rule purports to expand the States' § 401 certification authority to "any discharge into waters of the United States," encompassing both point source discharges and nonpoint source discharges, 40 C.F.R. § 121.1(f) (2023), rather than only "a discharge from a point source into a water of the United States" under the 2020 Rule, 40 C.F.R. § 121.1(f) (2020). Plaintiffs remark that the 2023 Rule broadens the scope of the "water quality requirements" that reviewing authorities must consider and conditions they may impose on the project applicants—including requirements related to State and Tribal waters—thus greatly expanding the criteria for certification and allowing States to impose far more conditions on the § 401 certification than under the 2020 Rule. 88 Fed. Reg. at 66,598; *see* Shresta Decl., Ex. B, Nat'l Hydropower Ass'n, *Comments on EPA's Clean Water Act Section 401 Water Quality Certification Improvement Rule* at 18-19 (Aug. 5, 2022) ("NHA 2022 Comment"); Olsheski Decl. ¶ par 12-15, 22-25, 32-25.

Defendants argue that requestors had no vested rights when they submitted their requests for certification, and application of the 2023 Rule to decisions on pending certification requests does not attach new legal consequences to past conduct or complete actions. At the hearing on the Motion, Defendants advised the Court that the requests for certifications, to which Plaintiffs complain are for renewals of existing certifications, and that Rule 2023 reverts back to the requirements prior to the 2020 Rule, *i.e.,* it restores to certifying authorities the level of authority in making certification decisions that they had for 50 years prior to the 2020 Rule.

A law "does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the [law's] enactment, or upsets expectations based in prior

law." *Landgraf*, 511 U.S. at 270. Rather, the "general rule is that a new law is applied to pending cases," *Cox v. Kijakazi*, 77 F.4th 983, 991 (D.C. Cir. 2023), unless its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," *Landgraf*, 511 U.S. at 280; see also *Lopez Ventura v. Sessions*, 907 F.3d 306, 314 (5th Cir. 2018). In making this determination, courts take "sound guidance" from "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270.

Defendants argue that Plaintiff had no vested rights when they submitted their requests for certification after the 2020 Rule, but before the 2023 Rule. Vested rights are "legal rights that [a party] already possesses when [it] filed [its] claims." *Cox* 77 F.4th at 991. In *McCavitt v. Kijakazi*, the court held that filing a request for a future legal determination did not vest the requestor with a legal right to have that request decided under regulation existing at the time of submission. 6 F.4th 692, 694 (7th Cir. 2021) (pending claims "are contingent, and the rule may change" until "the date of a judicial decision" when the right vests); *Surable Mfg. Co. v. United States Dep't Labor*, 578 F.3d 497, 503 (7th Cir. 2009) (holding that "filing of an application for a labor certification is simply a preliminary step" and "because it is not a final determination or event, no new legal consequences would affect the application as a result of the amended" law); *BellSouth Telecomms., Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 660-61 (6th Cir. 2006) ("[F]iling an application with an agency does not generally confer upon the applicant an inviolable right to have the agency rule on the application pursuant to the regulations in effect at the time of filing"); *Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118, 121

(1st Cir. 1997) ("mere filing of an application is not the kind of completed transaction in which a party could fairly expect stability of the relevant laws"); *Chadmoore Communications, Inc. v. FCC*, 113 F.3d 235, 241 (D.C. Cir. 1997) (no rights vested on filing application for extension for implementing license); *Hispanic Info. & Telecomms. Network, Inc. v. FCC*, 865 F.2d 1289, 1294-95 (D.C. Cir. 1989) ("The filing of an application creates no vested right to a hearing; if the substantive standards change so that the applicant is no longer qualified, the application may be dismissed."). Considering the caselaw provided by Defendants, the Court finds that Plaintiffs have failed to establish the likelihood of success as to the merits of their claim.

(*b*) *Irreparable harm*

Next, Plaintiffs argue that they will be irreparably harmed by the effects and/or conditions imposed by the 2023 Rule. Plaintiffs inform the Court that multiple members of the Association Plaintiffs have pending § 401 certification requests that they submitted with various States after the effective date of the 2020 Rule but before the effective date of the 2023 Rule.[2] Plaintiffs suggest that each of these members will suffer irreparable harm from the unlawful retroactive application of the 2023 Rule to their requests.[3]

Plaintiffs give examples of proponent projects with pending § 401 certification requests that tailored their requests based on the 2023 Rule.[4] Plaintiffs argue that these requesters will suffer irreparable harm because they must now re-evaluate their

---

[2] Shresta Decl. ¶¶ 4–30; Decl. of Michael Purdie ("Purdie Decl.") ¶¶ 8–9; Olsheski Decl. ¶¶ 8–9; Decl. of Luke T. Anderson, ("GLHA Decl.") ¶¶ 12–13; Decl. of Luke T. Anderson, ("RFH Decl.") ¶¶ 7–8.
[3] Olsheski Decl. ¶¶ 11–14; GLHA Decl. ¶¶ 15–19; RFH Decl. ¶¶ 10–14.
[4] Pyrites Hydroelectric Project, New York, Olsheski Decl. ¶ 8.

certification requests under the new 2023 Rule, which requires that the States have more expansive requirements, undermines the requester's prospects of obtaining approval, and increases compliance costs.

Specifically for the Pyrites Hydroelectric Project, New York must analyze how the entire "activity subject to the Federal license or permit," complies with the new broad definition of applicable water-quality requirements. 88 Fed. Reg. at 66,592; see also 40 C.F.R. § 121.3(a) (2023). Thus, Plaintiffs argue that new information would be required by the States to evaluate the pending requests. 40 C.F.R. § 121.5(c) (2023). Plaintiffs complain that under the 2023 Rule, New York may now "evaluate and place conditions on the 'activity,' which includes consideration of water quality-related impacts from both point sources and nonpoint sources." 88 Fed. Reg. at 66,569.

Plaintiffs also complain that the universe of conditions that New York may impose is significantly broader, by extending to "any other *water quality-related* requirement of state or Tribal law," even those that related to non-United States waters. 40 C.F.R. § 121.1(j) (2023) (emphasis added). Consequently, application of the 2023 Rule also adversely affects Pyrite's prospects for securing approval of its request from New York State, and should New York State reject Pyrites' request, requiring resubmittal, such will again require the expenditure of significant unrecoverable costs. Also, Plaintiffs assert that Patriot Hydro is at risk of New York imposing burdensome, absurd requirements unrelated to water quality on its project certification.[5]

---

[5] Plaintiffs also provide as an example NHA member Brookfield (through indirect subsidiaries) that has similarly submitted water quality certification requests with New Hampshire and Maine.

Conversely, Defendant argue that Plaintiffs have not established that they will experience irreparable harm as a result of the application of the 2023 Rule to pending requests for certification. Plaintiffs must make a "'clear showing' they have standing to maintain the preliminary injunction," *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017); accord *United States v. Texas*, 566 F. Supp. 3d 605, 634 (W.D. Tex. 2021) (noting heightened requirements for a preliminary injunction), and that they will be irreparably harmed in its absence, see *Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 n.6 (9th Cir. 2011) (noting that "a plaintiff may establish standing to seek injunctive relief yet fail to show the likelihood of irreparable harm necessary to obtain it").

Defendants argue that Plaintiffs have failed to allege harm to their members,[6] and even if they have, the alleged harm is speculative. Of significance, Defendants note that the NHA members do not attest to any actual costs they have or will necessarily incur. Defendants also argue that spending resources to prepare a certification request under the 2020 Rule is not a harm that flows from the 2023 Rule, particularly since the sufficiency of the request for certification is evaluated based on the 2020 Rule's requirements.5 88 Fed. Reg. at 66655.

Additionally, Defendants note that as to Pyrites' certification request, if additional information is requested, Pyrites may be able to furnish that information from the already-

---

[6] Specifically, Defendants point out that neither Great Lakes Hydro America nor Rumford Falls Hydro are NHA members but are "indirect subsidiaries" of Brookfield Power US Holding America Co.; while Patriot Hydro is a member of the NHA, the three projects discussed in the Olsheski Declaration are from wholly owned subsidiaries of Patriot and not from Patriot itself. Thus, Defendants contend that Plaintiffs have not shown how Brookfield Power and Patriot Hydro are affected by the alleged harms to their subsidiaries and/or the alleged harms are passed along to the parent companies that are NHA members. Plaintiffs, however, point out that NHA membership includes "members that own, directly or indirectly, hydropower facilities in operation." Second Decl. of Michael Purdie, ¶ 7 & exhibit a, p. 2.

prepared license application it submitted to the Federal Energy Regulatory Commissions ("FERC"), which covers the entire project, or that the responsive information might also be contained in Pyrites' existing responses to requests for information submitted by state and federal agencies participating in the relicensing proceeding.[7] Defendants argue that because Plaintiffs have not identified costs they have expended or will likely expend to comply with the 2023 Rule, its allegations of speculative harm is not sufficient. *Daniels Health Sciences., LLC v. Vascular Health Sciences. LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (quoting *Holand Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

The Court agrees with Defendants that Plaintiffs have not shown a harm that is more concrete "than an unfounded fear on the part of the applicant." *Daniels*, 710 F.3d at 585. See also *Tex. First Nat l Bank v. Wu*, 347 F.Supp.2d 389, 399 (S.D. Tex. 2004) (no irreparable harm where the moving party could not show that it would incur unique compliance costs absent a preliminary injunction); *see also Winter*, 555 U.S. at 22-23.  As noted earlier, the complained of pending certifications are renewals for existing facilities; the 2023 Rule is not entirely new to the requesters; the requesters had notice of the changes in the 2023 Rule prior to making their certification request; and for the most part, the 2023 Rule reverted back to the conditions and/or requirements that existed prior to the 2020 Rule. Irreparable harm is neither speculative nor remote but is actual and imminent. See *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894 (1953).

(c)     *Equitable factors*

---

[7] Exhibit 1; Exhibit 2, FERC docket.

Plaintiffs suggest that the balance of the equities and the public interest weigh in favor of providing injunctive relief because the 2023 Rule is unlawful, whereas Defendants argue otherwise.  Defendants remark that the 2023 Rule is the product of a two-year review and rulemaking process. Defendants suggest that an injunction would create regulatory confusion for some certification actions to continue to operate under the 2023 Rule, and others to operate under the 2020 Rule. Defendants argue that the public interest is best served by allowing the Rule 2023 to remain in effect while the Court considers the merits. In this instance, the Court agrees with Defendants, that the public interest is best served by allowing the 2023 rule to remain in effect. As such,

**IT IS ORDERED** that the Motion for Preliminary Injunction (Doc. 2) is **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 7th day of March, 2024.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRTICT JUDGE**